UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 09-21075-CR-COOKE

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JAMES MATHURIN,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court upon Defendant's Motion to Sever Counts **[DE 52]**, Defendant's Motion to Suppress Identification Testimony **[DE 58]**, Defendant's Motion to Suppress Statements **[DE 61]**, and an Order of Referral entered by the Honorable Marcia G. Cooke on May 17, 2010. **[DE 63]**. An evidentiary hearing on these matters took place before the undersigned United States Magistrate Judge on June 30, 2010. Upon review of the Motions, the Responses, the Replies, hearing witness testimony and argument from counsel and being otherwise duly advised in the premises, the undersigned makes the following findings.

### Background

Defendant is charged by way of a forty-nine (49) count Superceding Indictment[1] that charges him with, *inter alia*, violations of 18 U.S.C. § 1951 (Hobbs Act), violations of 18 U.S.C. § 924 (use of firearm in the commission of a violent offense), violations of 18 U.S.C. § 924 (car-jacking offenses). In sum, Defendant is charged with what the Government calls a "five month crime spree," in which he

---

[1]The original Indictment was returned on December 29, 2009. **[DE 1]**.

is alleged to have participated in eighteen (18) robberies, four (4) armed car-jackings and one (1) home invasion robbery. For present purposes, the Court adopts and incorporates by reference the remaining factual background and procedural history of this case, which is well documented in the court file, and the undersigned's Report and Recommendation dated June 4, 2010. **[DE 78]**.

## Pending Motions

As noted above, the following motions are pending before this Court: Defendant's Motion to Sever Counts **[DE 52]**, Defendant's Motion to Suppress Identification Testimony **[DE 58]**, and Defendant's Motion to Suppress Statements **[DE 61]**. Each one shall be addressed in turn.

## Defendant's Motion to Sever Counts [DE 52]

In his Motion **[DE 52]**, Defendant concedes that Counts 1, 2, 30 and 31 are properly joined. Counts 1 and 2 of the Superceding Indictment (SI) charge Defendant with conspiracies allegedly occurring between July 26, 2007 to December 12, 2007. Counts 30 and 31 also charges Defendant, along with co-conspirator Marckson Saint Fleur, in relation to the Hobbs Act robbery of the Au Bon Gout Restaurant on October 2, 2007. Defendant argues that the remaining Counts should be severed because certain offenses are not of the same or of similar character, are not based on the same act or transaction, and are not connected with or constitute parts of a common scheme or plan. The Government, on the other hand, argues that Counts are properly joined and there is no resulting prejudice to Defendant. The undersigned agrees.

Fed.R.Crim.P. 8 states in pertinent part,

**Rule 8. Joinder of Offenses or Defendants**

**(a) Joinder of Offenses.** The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged — whether felonies or misdemeanors or both – are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

> **(b) Joinder of Defendants.** The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Fed.R.Crim.P. 8.

As the Government correctly notes, the SI specifically charges Defendant and co-conspirator Saint Fleur with engaging in a *single* conspiracy during a five (5) month time period to commit Hobbs Act robberies and possess firearms in furtherance of same. Further, Defendant is charged with twenty-three (23) counts alleging robberies and gun offenses during the very same time frame. The substantive offenses (robberies and gun violations) are no doubt part of, and relate to, the conspiracy charges delineated in Counts 1 and 2. See e.g., U.S. v. Simon, 839 F.2d 1461, 1471-72 (11th Cir. 1988).

Consistent with the above, the undersigned finds that joinder is proper. When joinder is proper under Rule 8, a severance under Rule 14 is warranted only where a defendant can make a showing of "specific and compelling prejudice" which would render the jury incapable of independently evaluating the evidence as to each offense. Id. at 1472-73 ("A judge need not grant the motion for severance even if the jury's task of distinguishing the evidence is a difficult one."). Here, Defendant advances no more than the following conclusory allegation: "[a]ll these crimes are separate offenses and it will result in extreme prejudice to the Defendant [if] they are tried together." **[DE 52]**. That, without more, is insufficient to meet Defendant's burden and support severance.

Defendant also argues that "it would be a great cost, in time and money, to try all 49 counts together." Id. This Court disagrees. Conducting multiple jury selections, multiple *voir dires*, and multiple trials would serve only to unnecessarily expend scarce judicial resources. Consistent with the above and foregoing, it is **RESPECTFULLY RECOMMENDED** that Defendant's Motion to Sever

Counts [DE 52] be **DENIED**.

## Defendant's Motion to Suppress Identification Testimony [DE58]

Defendant seeks the suppression of all out-of-court identifications made by several witnesses based on a photographic display, as well as anticipated in-court testimony as to same. In support of his Motion [DE 58], Defendant argues, *inter alia*, that the photo display is impermissibly suggestive and that Defendant's photograph stands out dramatically from the other photos. Defendant also contends that several witnesses had given descriptions that are inconsistent with Defendant's physical characteristics. Defendant further argues that certain witnesses were unable to identify Defendant and that at least one witness made the identification almost three (3) years after the event in question.

The Government, on the other hand, contends that the photo display was not suggestive. Further, the Government argues that even if the Court finds suggestiveness, the identifications are still reliable under a consideration of the totality of the circumstances. Having reviewed the evidence and applied the relevant law to the facts at hand, the undersigned agrees.

In determining the constitutionality of an identification procedure, the Court must conduct a two-step analysis. Cikora v. Dugger, 840 F.2d 893, 895 (11th Cir. 1988). First, the Court must determine whether the identification procedure used was unduly suggestive. Id. "If not, that ends the inquiry." United States v. Garcon, 2008 WL420041, at 8* (S.D.Fla. Feb. 13, 2008) (quoting Williams v. Weldon, 826 F. 2d 1018, 1021 (11th Cir. 1987). If the Court does find suggestiveness, the Court must determine whether, based upon the totality of the circumstances, the identification was nonetheless reliable. Neil v. Biggers, 409 U.S. 188, 199 (1972).

In determining suggestiveness, the focus of the inquiry is whether the lineup suggests which individual the witness should identify, thereby creating a likelihood of misidentification. See id. at 198.

See, e.g., O'Brien v. Wainwright, 738 F.2d 1139, 1141 (11th Cir. 1984) (a photo lineup in which defendant's photo was the only one in color, while all others were in black and white was overly suggestive); Cikora, 840 F. 2d at 897-98 (a lineup in which defendant's photo was the only one with height markings was not overly suggestive); United States v. Ricks, 817 F. 2d 692, 697 (11th Cir. 1987) (a lineup in which defendant was the only individual wearing glasses was not impermissibly suggestive); Williams, 826 F. 2d at 1021 (a lineup in which defendant was the only black man in the array was not unduly suggestive where the other individuals had similar facial characteristics).

Here, the Government correctly notes that the photo lineup depicted only young African-American males of approximately the same age. Further, each of the individuals depicted had similar facial features, hair styles, and facial hair. Upon review, nothing in Defendant's photo stands out from the rest in the array. In fact, the evidence reveals a well balanced photo array.

At the evidentiary hearing, each officer testified that the photo lineup was computer generated from mug shots. (Hr'g. Tr. 72:23-25, 73:1-7, June 30, 2010.). Each color photo contained a head shot of approximately the same size. Most, if not all officers, testified that they told each witness that the suspect may or may not be depicted in the lineup, and gave the following admonition, or a slight variation of same:(1) do not focus on the lighting; (2) do not focus on clothing or complexion – which may vary; (3) do not focus on the hair or hairstyle; (4) do not focus on beards or mustaches; and (5) do focus on the facial feature features, e.g., eyes, nose, cheek bones and lips. (Hr'g. Tr. 75:13-23, 98:16-24, 177:4-7, 207:8-17.).

Having found that the photo-line up was not overly suggestive, the Court need not address the second prong, i.e., whether the identification was reliable under the totality of circumstances. However, for purposes of a complete record, the undersigned shall briefly address these issues.

5

Typically, courts consider five factors in determining whether the identification was reliable; they are: (1) the opportunity of the witness to view the suspect at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the suspect, (4) the level of certainly demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. O'Brien, 738 F. 2d at 1141.

Here, the Government correctly notes that each victim had the opportunity to observe Defendant at the time of each offense. There is no indication that the witnesses did anything other than pay close attention to Defendant who was brandishing a firearm at the time of the event. Further, each of the prior descriptions consistently identified the suspect as a black male with medium to husky build. Defendant was identified with certainty in each of the lineups.

Most, if not all of the following identifications were made without hesitation and/or a "strong tentative," as indicated by each testifying law enforcement officer.

| **Victim** | **Date/Venue of Crime** | **Date of Identification** | **Officer** |
|---|---|---|---|
| Russell Ramai | 9/10/07; Cellular Hut | 12/18/07. See Hr'g Tr., Ex. 19. | Officer Ray |
| Geurdy Lambert | 12/7/07; Dodge Durango carjacking | 12/14/07. See Hr'g Tr., Ex. 21. | Officer Bennett |
| Tomas Hutchins | 9/21/07; Hello Cellular. | 5/20/08. See Hrg. Tr., Ex. 17. | Detective Angulo |
| Ericka Arrivillaga Paola Barroeda | 8/7/07; Hello Cellular | 4/28/08. See Hrg. Tr., Exs. 14, 15. | Detective Mrytill |
| Esahak Fayz | 12/4/07; Popular Foods | 5/16/08; See Hrg. Tr., Ex. 16. | Detective Mrytill |

| Veranda Diodat | 8/7/007; Cellular Hut | 6/6/08; See Hrg. Tr., Ex. 18. | Detective Mrytill |
|---|---|---|---|
| Jessica Rodriguez | 8/17/07; Max Communication | 5/12/10; See Hrg. Tr., Ex. 20. | Detective Mrytill |

(Hr'g. Tr.).

In regards to the last prong, with the exception of the Max Communication identification, all positive identifications took place within three (3) days to eight (8) month of the offenses. See Chart *supra*. The Max Communication identification – by Jessica Rodriguez – took place approximately two and a half years after the August 18, 2007 incident. However, given the totality of the circumstances and the testimony of the investigating officer, the undersigned finds that her identification was reliable. Specifically, since Ms. Rodriguez indicated in her own handwriting - on the back of the photo array - "I believe the man I signed by was the gunman in the store. I have a[n] 80% [certainty]." See Ex. 20. Consistent with the above and foregoing, it is hereby **RESPECTFULLY RECOMMENDED** that Defendant's Motion to Suppress Identification Testimony **[DE 58]** be **DENIED**.

### Defendant's Motion to Suppress Statements [DE 61]

Defendant seeks suppression of all statements given by him to the authorities. Defendant argues, among other things, that his statements must be suppressed because: (1) he was illegally detained, arrested without a warrant and without probable cause; (2) the Miranda warnings provided were constitutionally deficient; and because (3) his statements were involuntary and coerced. **[DE 61]**. The Government, on the other hand, disputes all aspects of the Motion and contends that Defendant was lawfully in custody, appraised of his rights, and that any statements made were knowingly and

voluntarily. **[DE 67]**. This Court agrees.

1. **Lawfulness of Arrest**

The Supreme Court has held that an officer may make an investigatory stop if he or she has a reasonable suspicion, based on specific and articulable facts, that a person is involved in a past or present criminal activity. United States v. Hensley, 469 U.S. 221, 227 (1985). Furthermore, an officer may make a warrantless arrest if there is probable cause to believe a criminal offense has been or is being committed. Devenpeck v. Alford, 543 U.S. 146, 152 (2004). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." Id. The officer must be able to point to specific and articulable facts, which, taken together with rational inferences, reasonably warrant the intrusion. Id.; Terry v. Ohio, 392 U.S. 1, 21 (1968).

In determining whether there was probable cause to arrest Defendant, the Court must objectively assess whether the facts available to the officer at the time of the seizure would "warrant a man of reasonable caution in the belief" that arrest was appropriate. Id. at 22. The prosecution has the burden of showing that there was probable cause to believe that Defendant may be involved in a crime at the time of the arrest. Wong Sun v. United States, 371 U.S. 471, 491 (1963).

In applying the facts of this case to the relevant law, the undersigned finds that arresting Officer Reid had probable cause to arrest Defendant without a warrant. Specifically, Officer Reid testified that he saw Defendant emerging from between two houses within the established perimeter and attempting to walk along the sidewalk as if he had been walking there the entire time. (Hr'g. Tr. 138:22-23.). He approached Defendant and noticed that he was sweating profusely to the point that his pants were damp, but was wearing a dry shirt as if he had changed. (Hr'g. Tr. 139:16-20.). Upon questioning, Defendant

was unable to provide any details about his previous whereabouts, so Officer Reid then conducted a pat-down search. (Hr'g. Tr. 140,:L1-2.). Officer Reid testified in relevant part:

> I asked, "Do you have anything? Do you have any weapons on you or anything that is going to harm me while I am doing the pat down so I don't get stuck by needles," or whatever, and the defendant replied that he has a checkbook and that he found some money.

(Hr'g. Tr. 139:22-25, 140:1-2).

\* \* \* \*

> Then we walked closer towards my vehicle, and while I am talking to him, I asked him if he would mind emptying his pockets into the car. He did so. After that point, I noticed the checkbook that was placed on the hood of my car. I looked at the checkbook and I saw a name and recognized that name as being associated with the robbery.

(Hr'g. Tr. 140:8-15.).

Based on these facts, the undersigned finds that Defendant's statements are not the result of an invalid arrest and are admissible.

### 2. Adequacy of Miranda Warnings

Defendant argues that Miranda[2] warnings were not given to him during certain interrogations, and that even when they were given, they did not properly inform him of his right to consult with an attorney prior to interrogation. Defendant relies on Roberts v. Florida, 874 So. 2d 1225, 1227 (Fla. 4th DCA 2004) in support of his argument, which held that the defendant did not knowingly waive his Miranda rights because the warning failed to inform him of the right to have an attorney present *during* questioning. Defendant also cites Traylor v. Florida, 596 So. 2d 957, 966, n. 13 (Fla. 1992) to establish that the Florida Constitution requires that suspects be advised of their right to consult with counsel *before* and *during* interrogation. In sum, Defendant asserts that the statements he made to law enforcement should be suppressed because he was not properly advised of his right to consult with an

---

[2] See the landmark case Miranda v. Arizona, 384 U.S. 436 (1966).

attorney *before* questioning, only that he could have an attorney present *during* questioning.

Defendant's arguments do not persuade. So long as the warnings given prior to interrogation adequately convey the rights required by Miranda, the warnings are considered constitutionally sufficient. California v. Prysock, 453 U.S. 355, 361 (1981). While a "verbatim recital of the words of the Miranda opinion" are not required, the court must examine the warnings given to ensure that they reasonably convey to the suspect his rights as required by Miranda. Id. at 360. Recently, the Supreme Court held that police officers' warnings to a defendant notifying him of his rights to (1) consult an attorney before answering any questions, and (2) invoke any of his rights at any time satisfied the Miranda requirements. Florida v. Powell, 130 S. Ct. 1195, 1204-05 (2010) ("In combination, the two warnings reasonably conveyed [defendant's] right to have an attorney present, not only at the outset of interrogation, but at all times.").

In this case, Defendant signed an Acknowledgment of Rights (hereinafter "form") prior to interrogation and subsequent confession on five (5) separate occasions. The form states "If you want a lawyer now or at any time during questioning, you have that right. If you do start talking, you can stop at anytime you want to. Do you understand that right?" See Acknowledgment of Rights **[DE 67, Exs. A&B]**. Each time, Defendant initialed next to the "yes" column. On some occasions, Defendant even read back certain portions and/or verbally indicated his understanding of each right. (Hr'g. Tr. 11:12-17, 38:3-11, 161:11-12, 199:13-25, 200:1-4.).

The form further states, "Before you are asked any questions, you must understand your rights . . . [a]re you willing to answer anything that we ask you at this time without a lawyer present?" Id. Here, each and every law enforcement officer testified that Miranda warnings were provided to Defendant before every interview that was conducted. **[Exs. 1, 2, 6, 9, and 13]**. (Hr'g. Tr. 11:12, 38:5,

69:11, 92:2, 112:16, 112:23, 113:6, 115:17, 115:22, 116:5, 161:11, 119:7, 204:10.).

Based on the relevant case law, the officers' testimony, and clearly executed waiver forms, the undersigned finds that Defendant adequately received the required Miranda warnings prior to each interrogation, and therefore any and all subsequent statements are admissible.

### 3. Voluntariness of Waiver

Having determined that Defendant was adequately informed of his Miranda rights, the Court must determine whether his waiver of such rights was knowing and voluntary. Here, Defendant argues that even if the given Miranda warnings were constitutionally sufficient, his statements were not made freely and voluntary and should therefore be suppressed. Defendant specifically argues that his waiver is invalid because at the time of the initial interrogations, he was: (1) a minor with a 10th grade education; (2) fatigued, hungry, and beaten; and (3) kept in isolation. He further asserts that the officers never contacted his mother. All of these things, claims Defendant, mitigate against a finding of voluntariness.

Again, the Court is not persuaded. Pursuant to Miranda, the burden rests on the prosecution to demonstrate that the defendant knowingly, intelligently, and voluntarily waived his rights against self-incrimination. Id. The critical inquiry in determining the validity of a waiver is whether the statements were made voluntarily. Gore v. Sec'y for Dpt. of Corrs., 492 F.3d 1273, 1296 (11th Cir. 2007). To determine voluntariness, the court must inquire into the totality of the circumstances, which involves an assessment of the characteristics of the defendant and the nature of the interrogation. Dickerson v. United States, 530 U.S. 428, 433 (2000). The defendant's education, age, and intelligence, the length of detention, the prolonged nature of detention, and the defendant's physical health are among the factors which the court may consider. United States v. Bernal-Benitez, 594 F.3d 1303, 1319 (11th Cir.

2010).

At the time of arrest, Defendant was a seventeen-year old minor with a 10th grade education. While these are certainly important factors to consider, in this case, they do not support a finding that his statements were involuntary. There is no indication that Defendant lacked capacity to understand his rights or the consequences of waiving them. In particular, Defendant fully understands the English language and has not demonstrated any intellectual deficiencies or incompetence. In fact, at the suppression hearing, Defendant showed a fair knowledge and understanding of the meaning of "Miranda rights," "waiver," and "coercion" throughout his testimony.

Furthermore, he was advised of his rights before each and every interrogation, verbally indicated his understanding, and initialed a juvenile waiver form prior to five (5) of the thirteen (13)interrogations. According to the testifying officers, Defendant fully understood the rights he was giving up.(Hr'g. Tr. 12:13-19, 38:6-8, 69:22-25, 118:19, 163:7-10, 199:13-21, 199:24-25, 202:6-8, 203:15-24.). In fact, Detective Myrtil even annotated her observation that Defendant was "very intelligent" on one of the Miranda rights form (Hr'g. Tr. 202:6-8. Ex. 13.).

Given these circumstances, the undersigned finds that Defendant voluntarily and intelligently waived his Miranda rights, despite his age and level of completed education. See, e.g., Henyard v. McDonough, 459 F.3d 1217, 1240-41 (11th Cir. 2006) (analyzing defendant's confessions as though he was a juvenile, and finding that confessions were made voluntarily where: (1) police explained his rights twice; (2) he understood his rights despite his low intelligence; (3) there was no evidence of confusion or that he misunderstood; (4) the police did not engage in improper tactics; and (5) he had previous experience with the justice system); see also United States v. Kerr, 120 F.3d 239, 242 (11th Cir. 1997) (holding that seventeen year old defendant's statements were given freely and voluntarily

12

because he signed a waiver form, did not request an attorney, and was not coerced). Having determined that statements were made voluntarily, the undersigned shall briefly address Defendant's specific arguments.

### a. Notification of Parents

As noted above, Defendant suggests that the officers violated Fla. Stat. § 985.101(3)(2005)[3] by not contacting his mother when he was taken into custody. The purpose of the statute is to advise the juvenile's parents that the juvenile has been detained. Doerr v. Florida, 383 So. 2d 905, 907 (Fla. 1980). "[T]he law was intended for the benefit of the parents in knowing their child's whereabouts, not as a right of parents to be present when the interrogation of a child is conducted." Hodge v. Florida, 970 So. 2d 923, 928 (Fla. 4d DCA 2008). It does not prohibit officers from interrogating the juvenile before a parent is successfully notified. Brookins v. Florida, 704 So. 2d 576, 578 (Fla. 1st DCA 1997). Accordingly, a confession obtained in violation of the statute does not render it automatically inadmissible, but is one factor the court may consider when determining the voluntariness of a confession. Doerr, 383 So. 2d at 908.

Here, Defendant argues that the police officers never contacted his mother, denying her the opportunity to consult with Defendant prior to the interrogations. The Government, on the other hand, contends that Defendant specifically requested that police officers *not* contact his mother. (Hr'g. Tr. 120:7.). Nevertheless, Detective Gaudio testified that he attempted to contact Defendant's mother to advise her that her son was in custody, but was unable to reach her. (Hr'g. Tr. 138:22.).

Upon careful review, and having heard the sworn testimony of the law enforcement officers, the undersigned finds that Defendant clearly intended to cooperate with the law enforcement and that his

---

[3] Fla. Stat. § 985.101(3) was formally codified at Fla. Stat. §§ 985.207(2) and 39.037(2).

13

confession was voluntary notwithstanding the fact that his mother was not notified. See, e.g., Florida v. Paille, 601 So. 2d 1321, 1323 (Fla. 2d DCA 1992) ("[D]efendant's confession was voluntary, notwithstanding his age and mother's absence, given that he was [a seventeen year] 'old' juvenile and requested his mother not be contacted.").

### b. Notification of Attorneys

Defendant also argues that his attorneys were not contacted prior to questioning. There is no record evidence supporting this allegation. In the Government's Response to Defendant's Motion, Assistant United States Attorney Christina Maxwell represents that: (1) Roger Elkind, Esq., was contacted prior to the first meeting; (2) Julie Leckart, Esq., was contacted once it was discovered that she was also representing Defendant; (3) both attorneys advised Maxwell that they had no objections to the interrogations; and that (4) she advised both attorneys that she would be representing the above in the Government's Response. **[DE 67, P2, n.1]**. Furthermore, Detective Orenstein testified that he was present when Maxwell called Elkind to inform him that an interrogation was about to take place, and Elkind's position was that Defendant would be cooperating with the police and the interview could go forward outside of his presence. (Hr'g. Tr. 114:4, 114:16-18, 114:23.).

### c. Conditions of Confinement

Finally, Defendant contends that he was beaten, sleep and food-deprived, and not allowed to use the bathroom during various interviews. Upon careful consideration, the Court finds that Defendant's allegations are inconsistent with the sworn testimony of multiple law enforcement officers. Most, if not all of the officers testified that Defendant did not appear afraid, did not ask for a parent, did not appear to have been injured, did not appear uncomfortable or sleep deprived, and did not appear drugged, drunk, or otherwise incapacitated. Similarly, Defendant never complained of any of the above. (Hr'g.

Tr. 10:21, 10:25, 12:21-23, 13:4, 39:4-16, 39:24, 40:2, 40:22-25, 68:24, 69:8, 70:23, 71:1, 91:1-7, 91:14, 118:12, 119:13-20, 131:8, 141:19, 155:1-7, 161:16, 161:20, 163:15-18, 198:2-10, 200:22-25, 203:22-24, 204:2.). Further, a photograph taken several hours after Defendant claims Officer Reid beat him does not indicate any injuries. Additionally, none of the officers were carrying weapons at the time of the interrogations. All testified that they did not threaten Defendant in any fashion or use any force and that Defendant never appeared afraid or unwilling to cooperate. (Hr'g. Tr. 41:10, 70:9-17, 91:21-23, 119:10-23, 119:2-4.).

Given the totality of the circumstances, the representations made by the Government, and the testimony of the officers, the undersigned finds that Defendant's statements were made knowingly, intelligently, and voluntarily, and his statements should not be suppressed.

Consistent with the above and foregoing, it is hereby **RESPECTFULLY RECOMMENDED** that Defendant's Motion to Suppress Statements **[DE61]** be **DENIED**.

Pursuant to S.D. Fla. Magistrate Rule 4(b), the parties may serve and file written objections with the Honorable Marcia G. Cooke, United States District Judge, within fourteen (14) days of being served with a copy of this Report and Recommendation. Failure to file timely objections shall bar the parties from attacking on appeal any factual findings contained herein. RTC v. Hallmark Builders, Inc., 996 F. 2d 1144, 1149 (11th Cir. 1993); LoConte v. Dugger, 847 F. 2d 745 (11th Cir. 1988).

**DONE AND ORDERED** in Chambers at Miami, Florida, this 18 day of July 2010.

WILLIAM C. TURNOFF
**UNITED STATES MAGISTRATE JUDGE**

cc: Hon. Marcia G. Cooke
Counsel of Record