UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-21075-Cr-COOKE

UNITED STATES OF AMERICA,

    Plaintiff

vs.

JAMES MATHURIN,

    Defendant.

_____/

## ORDER

THIS MATTER is before me upon sentencing of Defendant James Mathurin. I have reviewed the parties' arguments, the Presentence Report, the record, and the relevant legal authorities. For the reasons provided in this Order, the Defendant is committed to the Bureau of Prisons to be imprisoned for a term of 492 months. Additionally, the Defendant shall be placed on supervised release for a term of five years, and pay a special assessment fee of $3,100.

### I. BACKGROUND

On April 20, 2010, a grand jury returned a superseding indictment against James Mathurin.[1] (*See* ECF No. 33). The superseding indictment charged Mathurin with one count of conspiracy to commit a robbery in violation of the Hobbs Act, 18 U.S.C. § 1951(a), one count of conspiracy to carry a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(o), one count of conspiracy to commit a carjacking in violation of 18 U.S.C. § 2119(1), one count of attempted robbery in violation of the Hobbs Act, 18 U.S.C. § 1951(a), twenty-three

---

[1] On April 1, 2009, Mathurin was indicted as a juvenile. On December 29, 2009, Mathurin was indicted as an adult. (ECF No. 1). The grand jury returned a superseding indictment on April 20, 2010. (ECF No. 33).

counts of possession of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1), eighteen counts of robbery in violation of the Hobbs Act, 18 US.C. § 1951(a), and four counts of carjacking in violation of 18 U.S.C. § 2119(1). At the time of his indictment the defendant was a juvenile. At a hearing before the Honorable Adalberto Jordan, Mathurin voluntarily waived his rights under the Juvenile Justice and Delinquency Prevention Act, 18 U.S.C. § 5031, *et seq.*, and proceeded as an adult. *See United States v. J.M.*, Case No. 09-20285-AJ (S.D. Fla. Aug. 27, 2009). Thereafter, this Court held a trial for Mathurin.[2]

A jury found Mathurin guilty of one count of conspiracy to commit a robbery in violation of the Hobbs Act, 18 U.S.C. § 1951(a), one count of conspiracy to carry a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(o), one count of attempted robbery in violation of the Hobbs Act, 18 U.S.C. § 1951(a), thirteen counts of possession of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1), thirteen counts of robbery in violation of the Hobbs Act, 18 US.C. § 1951(a), and two counts of carjacking in violation of 18 U.S.C. § 2119(1).

Each violation of the Hobbs Act, 18 U.S.C. § 1951(a), carries a sentence of imprisonment of not more than 20 years. Each count of carjacking in violation of 18 U.S.C. § 2119(1) carries a sentence of imprisonment of not more than 15 years. Each violation of possession of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1), where defendant brandished a firearm, carries a mandatory minimum sentence of 7 years. Where defendant is found guilty of subsequent convictions under this subsection, the defendant shall be sentenced to

---

[2] Before trial was set to begin, the Government offered plea deals to Mathurin and his co-defendant, Marckson Saint Fleur. Saint Fluer entered into a Plea Agreement with the Government, by which he pleaded guilty to one count of Hobbs Act robbery and one count of possession in furtherance of a crime of violence, 18 U.S.C. § 924(c)(1)(A). This Court sentenced Saint Fluer to a total of 150 months imprisonment, five years of supervised release, and payment of $850.00 in restitution. (ECF No. 259).

a minimum term of imprisonment of not less than 25 years. Terms of imprisonment under this subsection cannot run concurrently. 18 U.S.C. § 924(c)(1)(D). Finally, each violation of conspiracy to carry a firearm in furtherance of a crime of violence, 18 U.S.C. § 924(o), carries a sentence of imprisonment of not more than 20 years.

> Title 18, section 924(c)(1) of the United States Code provides in relevant part:
>
> (A) [A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—
> * * *
> (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years;
> * * *
> (C) In the case of a second or subsequent conviction under this subsection, the person shall--
> (i) be sentenced to a term of imprisonment of not less than 25 years
> * * *
> (D) Notwithstanding any other provision of law--
> * * *
> (ii) no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence or drug trafficking crime during which the firearm was used, carried, or possessed.

As a result of the statutory requirement that each violation under 18 U.S.C. § 924(c)(1) shall run consecutively with any other term of imprisonment, Mathurin faces a mandatory minimum sentence of 307 years. Pursuant to the Sentencing Reform Act of 1984, federal offenders who, like Mathurin, commit offenses on or after November 1987 are no longer eligible for parole. Pub. L. 98-473, 98 Stat. 2019 (1987).

On July 6, 2010, the Supreme Court held in *Graham v. Florida*, 130 S. Ct. 2011, 2034 (2010), that the Eighth Amendment prohibits the imposition of a life sentence without the possibility of parole on a juvenile offender who did not commit a homicide. The Supreme Court

3

held that if the State imposes a sentence of life, it must provide the juvenile offender "with some realistic opportunity to obtain release before the end of that term." *Graham*, 130 S. Ct. at 2034. Sentencing a non-homicide juvenile federal offender under the mandatory statutory scheme in 18 U.S.C. § 924(c)(1) in light of *Graham* is an issue of first impression.

## II. ANALYSIS

### A. Graham v. Florida

In *Graham*, the Supreme Court held that a sentence of life without the possibility of parole imposed on a juvenile offender convicted of a non-homicide offense violated the Eighth Amendment's protections against cruel and unusual punishment. 130 S. Ct. at 2034. The Court based its decision on principles set forth in *Roper v. Simmons*; namely, juveniles have lessened culpability because of their general "lack of maturity[,]…underdeveloped sense of responsibility" and their heightened "vulnerab[ility] or suscept[ibility] to negative influences and outside pressures, including peer pressure." 543 U.S. 551, 569 (2005). Although the *Graham* Court clarified that it did not mean to absolve juvenile defendants of responsibility for their actions, the Court found that their transgressions are not as morally reprehensible as those of an adult. 130 S. Ct. at 2026 (citing *Thompson v. Oklahoma*, 487 U.S. 815 (1998)). The Court's ruling reflects its concern that the very immaturity that led to an offender's conviction will be reinforced by the prison term. *Id*. at 2033. Once incarcerated under a life without parole sentence, a young person has "no chance for fulfillment outside prison walls, no chance for reconciliation with society, no hope." *Id*. at 2032.

The Court noted that although a state "is not required to guarantee eventual freedom to a juvenile offender convicted of a non-homicide crime," it must give non-homicide juvenile offenders "some meaningful opportunity to obtain release based on demonstrated maturity and

4

rehabilitation." *Id*. at 2030.  The Court, however, provided no practical guidance to sentencing courts, noting instead, that "[i]t is for the State, in the first instance, to explore the means and mechanisms for compliance." *Id*.  The Court did not foreclose the possibility that a court may sentence a non-homicide juvenile to what would amount to a life sentence, as long as some mechanism such as parole is available to the juvenile, giving him or her a "meaningful opportunity" to eventually obtain release:

> It bears emphasis, however, that while the Eighth Amendment forbids a State from imposing a life without parole sentence on a juvenile nonhomicide offender, it does not require the State to release that offender during his natural life. Those who commit truly horrifying crimes as juveniles may turn out to be irredeemable, and thus deserving of incarceration for the duration of their lives. The Eighth Amendment does not foreclose the possibility that persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life. It does forbid States from making the judgment at the outset that those offenders never will be fit to reenter society.

*Id*.

Here, Mathurin faces a mandatory minimum 307-year sentence.  Because Congress has abolished the federal parole system, this sentence gives Mathurin no possibility of release based on demonstrated maturity and rehabilitation.  A significant portion of this sentence is comprised of mandatory 25-year consecutive sentences required under § 924(c)(1)(D)(ii), which provides:

> [N]o term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence or drug trafficking crime during which the firearm was used, carried, or possessed.

Under *Graham*, this provision of § 924(c)(1)(D) is unconstitutional as applied to Mathurin, a juvenile offender convicted of non-homicide offenses.  To apply the statute in accordance with the Eighth Amendment, severance of the constitutionally offensive portion of § 924(c)(1)(D) is necessary.

### B. Severability Principles

"[W]henever an act of Congress contains unobjectionable provisions separable from those found to be unconstitutional, it is the duty of [the] court to so declare, and to maintain the act in so far as it is valid." *Regan v. Time, Inc.*, 468 U.S. 641, 652 (1984); *see also El Paso & Ne. Ry. Co. v. Gutierrez*, 215 U.S. 87, 96 (1909). Whether § 924(c)(1)(D)(ii) is severable from the remainder of the statute is "largely a question of legislative intent." *Regan*, 468 U.S. at 653. "[T]he presumption is in favor of severability." *Id*. "Unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law." *Id*. (quoting *Buckley v. Valeo*, 424 U.S. 1, 108 (1976)).

Consistent with these principles, I must determine whether the remaining provisions of § 924(c)(1) can survive in the absence of the consecutive sentencing requirement. *See id*.; s*ee also United States v. Romero-Fernandez*, 983 F.2d 195, 196 (11th Cir. 1993) ("In determining whether to sever a constitutionally flawed provision, courts should consider whether the balance of the legislation is incapable of functioning independently."). If so, I must retain those portions of § 924(c)(1) that are "(1) constitutionally valid, (2) capable of functioning independently, and (3) consistent with Congress's basic objectives in enacting the statute." *United States v. Booker*, 543 U.S. 220, 258-59 (2005).

#### 1. Constitutionally Valid Portions of § 924(c)(1)

Aside from § 924(c)(1)(D)(ii), which mandates consecutive sentences, no other provision of § 924(c)(1) poses constitutional problems in the instant case.

#### 2. Section 924(c)(1) is Capable of Functioning Independently of Unconstitutional Provision

The remainder of § 924(c)(1) is capable of functioning independently of

6

§ 924(c)(1)(D)(ii). Having severed that provision, the statutory framework remains intact. Section 924(c)(1) provides a two-tiered sentencing structure. For the first conviction, a court must sentence the offender to no less than 5 years, 7 years if the offender brandishes a firearm, or 10 years if the offender discharges a firearm; if the firearm is a short-barreled rifle, short-barreled shotgun, or a semiautomatic assault weapon, the mandatory minimum sentence is 10 years, or if the firearm is a machinegun or destructive device, the mandatory minimum is 30 years. 18 U.S.C. §§ 924(A)(i)-(iii), (B)(i)-(ii). In the case of a second or subsequent conviction, a court must sentence the offender to a mandatory minimum sentence of 25 years, or, if the firearm is a machinegun or destructive device to life imprisonment. Even removing § 924(c)(1)(D)(ii), the two-tiered statutory framework and the plain language of the statute, indicate that the § 924 (c)(1)(A) and (B) sentence for a first conviction must run consecutively with the second or subsequent conviction under § 924 (c)(1)(C). Congress would not have created a two-tiered framework expressly distinguishing between the first conviction and the second conviction, if the sentence for the first conviction and the sentence for the second conviction were not to run consecutively.

   The legislative record for § 924 supports this finding. In 1969, Senator Mike Mansfield (Montana) proposed an amendment to the § 924 sentencing scheme that would minimize judicial discretion in the sentencing of second or subsequent offenders by mandating a 2- to 25-year sentence. In doing so, Senator Mansfield asserted that this scheme would ensure that "[i]f the choice [to use or carry a firearm in committing a federal felony] is made more than once, the offender can in no way avoid a prison sentence regardless of the circumstances." 115 Cong. Rec. 34,838 (1969). "In addition to the penalty that the court would impose for the specific offense, [the amendment] provides additional penalties of from 1 to 10 years on an initial

conviction *and*…of not less than 2 nor more than 25 years on a second or subsequent conviction." *Id*. at 34,839 (emphasis added).  Senator Mansfield's use of "and" here, followed by the Senate's agreement to the amendment, demonstrates the tacit intent that repeat violators of § 924(c) would be met with harsher penalties in the form of sentences additional to, not concurrent to, those imposed on first-time or singular violators.  Similar statements were made in 1970 when the Senate discussed amending § 924(c) again to require that second and subsequent offenders receive mandatory 25-year sentences for each additional violation.  *See* 116 Cong. Rec. 35,734 (1970).

### 3. *The Remainder of § 924(c)(1) is Consistent with Congress's Basic Objectives*

The third step of the *Regan/Booker* analysis requires me to "determine what 'Congress would have intended' in light of the Court's constitutional holding."  *Booker*, 543 U.S. at 246.  A court must inquire whether Congress would have passed the valid sections "had it known" about the constitutional invalidity of other portions of the statute.  *See id*.; *Denver Area Educ. Telecomms. Consortium, Inc. v. FCC*, 518 U.S. 727, 767 (1996).  Applying this standard, I find that Congress, had it known of the constitutional invalidity of the consecutive sentence requirement as applied to non-homicide juvenile offenders, would have passed the statute—and in fact originally did pass the statute—without that provision.   The policies Congress sought to advance by enacting §924 can be effectuated even where sentences under § 924(c)(1) run concurrently rather than consecutively.

At the outset, I note that Congress explicitly provided for severance in 18 U.S.C. § 928, which provides:

> If any provision of this chapter or the application thereof to any person or circumstance is held invalid, the remainder of the chapter and the application of such provision to other persons not similarly situated or to other circumstances shall not be affected thereby.

8

"[T]he inclusion of . . . a [severability] clause creates a presumption that Congress did not intend the validity of the statute in question to depend on the validity of the constitutionally offensive provision." *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 686 (1987) (citing *INS v. Chadha*, 462 U.S. 919, 932 (1983); *Champlin Ref. Co. v. Corp. Comm'n of Okla.*, 286 U.S. 210, 235 (1932)).  In such a case, "unless there is strong evidence that Congress intended otherwise, the objectionable provision can be excised from the remainder of the statute." *Alaska Airlines*, 480 U.S. at 686.

Congress enacted § 924 as part of the Gun Control Act of 1968 in reaction to increased gun crime rates.  Senator Mansfield, in explaining the intended purpose of the Act, testified:

> [W]ith this bill I offer another approach to curtailing the gun crime rate–an approach that says to the criminal in terms that are clear and simple that his resort to a gun will be met automatically with punishment that fits such an act of violence…[N]o burden is imposed on the law-abiding gun owner. The burden falls squarely where it belongs–on the criminal and the lawless; on those who roam the streets, gun in hand, ready and willing to perpetrate their acts of violence…I know there is something wrong when…our gun crime rate continues to spiral upward, [but] our prison population shrinks proportionately.  I hope this trend is reversed.  I would think an assured prison sentence for criminals who choose to resort to firearms would help establish such a reversal or at least stem the tide. That is the purpose of my bill.

S. Rep. No. 91-539, at 2 (1969).

In 1970, Congress amended the statute to require an offender to serve any sentences for subsequent convictions under the Act consecutively with any sentence imposed for the underlying felony conviction.  *Id*. at 4.  This amendment reflected the Senate's intent to more harshly sentence offenders convicted for multiple violations of § 924(c)(1).  In creating an express provision for consecutive sentences for subsequent violations of the statute, Congress intended to "protect society from criminals who misuse firearms and resort to violent crimes" and "hit the criminal element and hit it hard."  116 Cong. Rec. 35,734 (1970).

9

In 1984, Congress amended this provision to reflect that subsequent convictions under § 924(c)(1) could not run concurrently with *any* other term of imprisonment, including that imposed for the crime during which the offender used or carried a firearm.  H.R.J. Res. 648, 98th Cong. (1984).  The amendment was enacted in reaction to *Busic v. United States* which held that, where the predicate felony statute contained its own enhancement provision, § 924(c) could not be applied in sentencing at all.  446 U.S. 398, 406 (1980).  Despite *Busic*, the Senate Committee on the Judiciary concluded that § 924(c)(1), as amended, would ensure that "all persons who commit Federal crimes of violence, including those crimes set forth in statutes which already provide for enhanced sentences…receive a mandatory sentence, without the possibility of the sentence…[running] concurrently with that…for any other crime."  S. Rep. No. 98-225, at 313 (1983).

Notably, the legislative history contains no mention of the amended statute's applicability to prospective juvenile offenders.[3]  It does not appear that Congress envisioned the application of this statute to juvenile offenders convicted of non-homicide offenses.

Therefore, consistent with Congress's intent and with Supreme Court precedent on the doctrine of severability, I find that the language of § 924(c)(1)(D)(ii) mandating consecutive sentences for subsequent violations is excisable from the remainder of the statute as it applies to Mathurin and similarly situated juvenile defendants.  This holding is limited to the unique circumstances of this case, which involves a non-homicide juvenile offender sentenced under

§ 924(c)(1) for multiple counts of possession of a firearm during the commission of a violent crime; it does not affect the consecutive sentence requirement as applied to adult offenders or juvenile offenders under different factual circumstances. *Cf. Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 329 (2006) ("It is axiomatic that a statute may be invalid as applied to one state of facts and yet valid as applied to another." (internal quotations omitted)).

### C. Other Applicable Considerations Related to Sentence

Under this narrow holding of this case, Mathurin's sentence amounts to 492 months in prison. Additionally, under 18 U.S.C. § 3624(b), Mathurin may reduce his sentence by 54 days per year of incarceration if he "display[s] exemplary compliance with institutional disciplinary regulations." Pursuant to 18 U.S.C. § 3624(b), Mathurin may reduce his total sentence by approximately 5.5 years. Thus, if Mathurin demonstrates maturity and rehabilitation, he may be eligible for release at around the age of 53.[4] Mathurin's total term of incarceration, considering the potential reductions under 18 U.S.C. § 3624(b), complies with both the Eighth Amendment and Congress's statutory requirements.

---

[3] Although Congress did not discuss the prospective impact of § 924(c)(1)'s consecutive sentencing provision on juvenile offenders, Congress did consider the impact on juveniles of other aspects of the statute. Speaking in opposition to an amendment to § 924(c) that increased the statute's mandatory minimum sentences, Rep. Waters (California) advocated for judicial discretion in sentencing. In doing so, Waters said "[Judges] have got to be very tough; in other cases, they know the difference, when we just have a stupid kid who has fallen into an ill-conceived law like this one…to have their lives thrown away simply because they are stupid." 144 Cong. Rec. H530-35, at 534 (daily ed. Feb. 24, 1998) (statement of Rep. Maxine Waters). In response, Rep. McCollum (Florida) addressed the desire to deter young people involved in street crime from using guns in furtherance of crimes of violence. *Id.*

[4] Mathurin was arrested on state charges on December 12, 2007. He may be eligible to receive a credit of up to approximately 3.5 years (42 months) towards his sentence for the pre-sentencing period of time in which he was in "official detention." *See* 28 U.S.C. § 3585(b); *see United States v. Harris*, 876 F.2d 1502, 1506-07 (11th Cir. 1989) ("Where a convicted federal prisoner claims credit for time served in a state jail or prison, the burden is on the prisoner to establish that the state confinement 'was exclusively the product of such action by Federal law-enforcement officials [so] as to justify treating the State jail as the practical equivalent of a Federal one.'").

### III. CONCLUSION

Upon consideration of the facts of this case and the relevant legal authorities, it is **ORDERED and ADJUDGED** that Defendant, James Mathurin, is committed to the Bureau of Prisons to be imprisoned for a term of 492 months. Mathurin's total offense level is 29; he has a criminal history category of III. His imprisonment range under the U.S. Sentencing Guidelines is therefore 108 to 135 months. This term consists of 108 months as to each conviction under 18 U.S.C. § 1951(a), 18 U.S.C. 924(o), and 18 U.S.C. § 2119(1) (Counts 1, 2, 4, 6, 8, 10, 12, 14, 16, 20, 22, 28, 30, 32, 34, 44, 46, and 48 of the Superseding Indictment), to be served concurrently. The term also consists of 84 months as to the first conviction under §924(c)(1) (Count 7 of the Superseding Indictment), to be served concurrently to the terms imposed for Counts 1, 2, 4, 6, 8, 10, 12, 14, 16, 20, 22, 28, 30, 32, 34, 44, 46, and 48. Finally, the term also consists of 300 months as to the subsequent convictions under § 924(c)(1) (Counts 9, 11, 13, 17, 23, 29, 33, 35, 45, 47, and 49 of the Superseding Indictment), to run concurrently to each other, but consecutively to the terms imposed for Counts 1, 2, 4, 6, 7, 8, 10, 12, 14, 16, 20, 22, 28, 30, 32, 34, 44, 46, and 48.

**DONE and ORDERED** in chambers, at Miami, Florida, this 29th day of June 2011.

*[signature: Marcia G. Cooke]*
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*William C. Turnoff, U.S. Magistrate Judge*
*Counsel of record*